**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-00110-NYW-NRN
(Consolidated with Civil Action No. 22-cv-00239-NYW-NRN)

TETRA TECH INC., and
J.R. FILANC CONSTRUCTION COMPANY, INC.,

      Plaintiffs,

v.

TOWN OF LYONS,

      Defendant.

---

## ORDER

---

This consolidated action is before the Court on the following motions:

(1)      Honeywell International Inc.'s ("Honeywell") Motion to Dismiss and Compel Arbitration ("Honeywell's Motion to Dismiss") [Doc. 24, filed March 21, 2022];

(2)      Defendant Town of Lyons's ("Defendant" or "Lyons" or the "Town") Motion to Dismiss Complaint ("First Motion to Dismiss") [Doc. 27, filed March 21, 2022];

(3)      The Town's Motion to Dismiss Tetra Tech's Complaint or to Compel Arbitration ("Second Motion to Dismiss") [Doc. 41, filed June 2, 2022]; and

(4)      Plaintiff Tetra Tech Inc.'s ("Tetra Tech") Cross-Motion for Summary Judgment (collectively, the "Motions") [Doc. 43; Doc. 43-1, filed June 6, 2022].[1]

This Court concludes that oral argument would not materially assist in the resolution of these matters. Upon careful review of the above Motions and associated briefing, the docket, and

---

[1] [Doc. 43] is a document titled "Notice of Refiling of Cross-Motion for Summary Judgment Per Court Order," and the Cross-Motion for Summary Judgment is filed at [Doc. 43-1].

applicable case law, the Court respectfully **GRANTS IN PART AND DENIES IN PART** the Town's First Motion to Dismiss and Second Motion to Dismiss; and **DENIES AS MOOT** Honeywell's Motion to Dismiss and Tetra Tech's Cross-Motion for Summary Judgment.

## BACKGROUND

This case involves a multi-party dispute regarding the contracts and subcontracts for construction of a wastewater treatment plant ("WWTP" or "treatment plant") owned by and located in Lyons, Colorado; related arbitration proceedings before the American Arbitration Association ("AAA"); and a related state court case that is currently stayed pending the arbitration. *See* [Doc. 1]. In December 2013, Lyons entered into a Guaranteed Energy Cost-Savings Contract (the "Prime Contract") with Honeywell International, Inc. and/or Honeywell Business Solutions (collectively, "Honeywell entities" or "Honeywell")[2] to design and construct improvements to the WWTP (the "Project"). [*Id.* at ¶ 17; Doc. 41-1]. In April 2014, Honeywell contracted with Plaintiff J.R. Filanc ("Filanc" and, collectively with Tetra Tech, "Plaintiffs") to design and build the WWTP ("Filanc Subcontract"). [Doc. 1 at ¶¶ 20–25; Doc. 41-3]. In May 2014, Honeywell contracted with Tetra Tech to help design the work for the Project ("Tetra Tech Subcontract"). *See* [ECF No. 1 at ¶¶ 15–18; Doc. 41-2 ("Tetra Tech Subcontract")].[3] Another entity, FEI Engineers, Inc. ("FEI"), was also involved in the Project. *See* [Doc. 24 at 4].

---

[2] There is some confusion over which Honeywell was a party to which contract. *See* [Doc. 1 at ¶¶ 43–44; Doc. 24 at 13–14]. For the purposes of the instant Motions, the Court will treat them as the same because both were voluntarily dismissed, *see* [Doc. 31; Doc. 39], and any distinction between the two entities does not impact the outcome or analysis of this Order.

[3] Where the Court refers to the filings made in the Electronic Case Filing ("ECF") system in this action, it uses the convention [Doc. __]. By contrast, the Court uses the convention [ECF No. ___] when it refers to the ECF docket number for the consolidated action initiated by Tetra Tech, *Tetra Tech Inc. v. Town of Lyons*, No. 1:22-cv-00239-NYW-SKC, discussed further below. In either case, the Court identifies the page number as assigned by the ECF system.

## I.      The Contracts and Their Dispute Resolution Clauses

The Prime Contract, Filanc Subcontract, and Tetra Tech Subcontract contain arbitration provisions, the relevant portions of which are provided below.

*Prime Contract.*   The disputes clause in the Prime Contract is found in "Article 12 Arbitration" of Exhibit A thereto:

> 12.1 With the exception of any controversy or claim arising out of or related to the installation, monitoring, and/or maintenance of fire and/or security systems, *the Parties agree that any controversy or claim between Honeywell and Lyons arising out of or relating to this Agreement, or the breach thereof, shall be settled and administered by arbitration in a neutral venue in the State of Colorado, conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.*
>
> Any award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Any controversy or claim arising out of or related to the installation, monitoring, and/or maintenance of systems associated with security and/or the detection of, and/or reduction of risk of loss associated with fire shall be resolved in a court of competent jurisdiction.

[Doc. 41-1 at 105 (emphasis added)].

*Tetra Tech and Filanc Subcontracts.*   The disputes clause in the Tetra Tech Subcontract and the claims resolution provision in the Filanc Subcontract contain identical language:[4]

> *Except as otherwise set forth below*, any dispute arising out of or relating to this agreement will be finally resolved by a sole arbitrator in accordance with the Center for Public Resources (CPR) Institute for Dispute Resolution Rules for Non-Administered Arbitration then currently in effect. The arbitration will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The place of arbitration will be at a location specified by Honeywell.
>
> Either party may apply to the arbitrator seeking injunctive relief until the arbitration award is rendered or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this agreement, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights

---

[4] The disputes clause is found in Section 35 of the Tetra Tech Subcontract, [Doc. 41-2 at 5–6], and the claims resolution provision is found in Article 12.2.2 of the Filanc Subcontract, [Doc. 41-3 at 7].

or property of that party, pending the arbitrator's determination of the merits of the controversy.

Any dispute involving intellectual property rights will be adjudicated before a court of competent jurisdiction and this section will not be binding on either party with respect to the dispute in its entirety or any related dispute, including any portions of the dispute that do not concern intellectual property rights.

*Subcontractor agrees, at Honeywell's sole discretion, to join and to participate in any dispute resolution process required by Honeywell's contract with the Customer and/or Owner if any dispute relates to Subcontractor's work.* In the event that the Subcontractor makes a claim for additional compensation or any other relief that, in Honeywell's sole judgment, arises out of acts or conditions for which the Customer and/or Owner may be responsible, Subcontractor will participate in the dispute resolution process with the Customer and/or Owner and agreed to be bound by the results.

[Doc. 41-2 at 5–6; Doc. 41-3 at 7 (emphasis added)].[5]

## II.    The State Court Action

On February 26, 2021, Lyons filed a complaint in Boulder County District Court, Case No. 2021CV30180, naming the Honeywell entities, Tetra Tech, Filanc, and FEI as defendants, claiming there were various engineering and construction issues with the Project (the "Boulder Action"). [Doc. 1 at ¶ 26; ECF No. 1 at ¶ 19]. Filanc and Tetra Tech represent that Lyons "allege[d] a single claim" against them in the Boulder Action for breach of contract. [Doc. 1 at ¶ 27; ECF No. 1 at ¶ 20].

On March 30, 2021, Honeywell moved to compel arbitration and dismiss the Boulder Action or, in the alternative, stay the complaint pending arbitration. *See* [Doc. 25-2].[6] Honeywell

---

[5] The claims resolution provision in the Filanc Subcontract also includes that "[t]his agreement to arbitrate will not be deemed a limitation of rights or remedies under the laws of the United States of America, under applicable state mechanics' lien laws, or under applicable labor or material payment bonds unless the rights are expressly waived by the Subcontractor." [Doc. 41-3 at 7].

[6] The Court may take judicial notice of undisputed court documents and matters of public record as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (citation omitted) (noting that under Federal Rule of Evidence 201, judicial notice may be taken "whether requested or not," and "at any stage of the proceeding"). And the Court may

argued that pursuant to the Federal Arbitration Act ("FAA"), Lyons was required to arbitrate its disputes under the broadly worded arbitration clause in the Prime Contract. [*Id.* at 2–3]. In addition, Honeywell asserted that under the AAA's Construction Industry Arbitration Rules— which the Prime Contract incorporated into the arbitration clause—"any questions relating to the jurisdiction of the arbitrator or the arbitrability of the claims must be decided by the arbitrator." [*Id.* at 6]. Honeywell also contended that the arbitration provisions in the Filanc and Tetra Tech Subcontracts "would allow Honeywell to join them as parties to any arbitration proceeding with the Town," [*id.* at 15], based on language in those Subcontracts stating, "Subcontractor agrees, at Honeywell's sole discretion, to join and to participate in any dispute resolution process required by Honeywell's contract with the Customer and/or Owner if any dispute relates to Subcontractor's work." [*Id.* at 15 n.5 (internal quotation marks omitted)]; *see also* [Doc. Doc. 41-2 at 6; Doc. 41-3 at 7].

On April 13, 2021, Filanc moved to dismiss Lyons's claim against it or, in the alternative, to stay the Boulder Action pending completion of arbitration. [Doc. 25-3]. In that motion, Filanc acknowledged the Prime Contract "contains a broad and enforceable arbitration clause requiring [Lyons] to arbitrate any controversy or claim between Honeywell and [Lyons] arising out of or relating to their agreement concerning the Project." [*Id.* at 9]. Filanc also acknowledged that "[t]o the extent [Lyons's] claims implicate subcontractors' work, Filanc may be required to participate in the arbitration under the terms of the Subcontract." [*Id.*]. In addition, in seeking a stay of the Boulder Action pending completion of arbitration, Filanc insisted that there was a "great" risk "of

---

take judicial notice of filings in related cases, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

wasteful, duplicative litigation and inconsistent results" if the state court disallowed a stay, and Lyons was "simply choosing to litigate its claims in the wrong forum." [*Id.*].

On May 27, 2021, the state court granted Honeywell's request to compel arbitration. [Doc. 41-4 at 1–2]. That order provided in relevant part that (1) "this matter and all of the Town's claims against Honeywell must be submitted to binding arbitration" in accordance with the Prime Contract, and (2) "[a]ny issues of jurisdiction and of arbitrability should be decided by the arbitrator in accordance with the [Prime] Contract's incorporation of the AAA rules." [*Id.* at 2].[7] Moreover, rather than order dismissal, the state court stayed the Boulder Action "pending the outcome of arbitration if any claims or need for enforcement remain." [*Id.* at 1, 3–4].

## III.    The AAA Arbitration

On August 19, 2021, Lyons initiated arbitration proceedings with the AAA, asserting the same claims against the same defendants in the Boulder Action ("AAA Arbitration"). [Doc. 1 at ¶ 30; ECF No. 1 at ¶ 26]. On September 2, 2021, Honeywell filed cross claims against Filanc and Tetra Tech, and requested joinder of those parties to the arbitration. [Doc. 1 at ¶ 31; ECF No. 1 at ¶ 27; Doc. 41 at 9]. Between September 3 and September 16, 2021, Filanc and Tetra Tech sought dismissal of Lyons's arbitration demand and Honeywell's request for joinder, arguing in part that "the AAA has no jurisdiction over [Plaintiffs] . . . and no authority to hear" the Town's claims against Plaintiffs. [Doc. 1 at ¶¶ 33–34; ECF No. 1 at ¶¶ 29–30]; *see also* [Doc. 25-6].[8] In one of the motions filed by Filanc, Filanc argued that it did not enter into any contract with Honeywell,

---

[7] The state court subsequently granted in part Filanc's motion to dismiss or stay, based on its order on Honeywell's motion to compel arbitration. *See* [Doc. 25-5 at 2].

[8] The Court's judicial notice extends to documents filed in arbitration. *See Good Funds Lending, LLC v. Westcor Land Title Ins. Co.*, No. 19-cv-00861-RM-MEH, 2020 WL 1514669, at *4 n.3 (D. Colo. Mar. 30, 2020) (taking judicial notice of arbitration proceedings, "including the filings" (citing *Asphalt Trader Ltd. v. Beal*, No. 1:17-cv-00015-HCN, 2019 WL 4932748, at *2 (D. Utah Oct. 7, 2019) (collecting cases))).

and the Prime Contract "does not confer jurisdiction on the AAA to arbitrate the parties' disputes or permit [Honeywell] to join Filanc to th[e] arbitration." [Doc. 25-6 at 3].[9]  Thereafter, Plaintiffs continued to "object[] to the AAA's jurisdiction and authority to determine its jurisdiction over" Plaintiffs. [Doc. 1 at ¶ 35; ECF No. 1 at ¶ 31].

On January 6, 2022, the AAA Panel issued an order "declaring, in relevant part, that it has authority 'to rule on jurisdiction, including objections to the existence, scope, or validity of arbitration agreements' and setting a briefing schedule on Plaintiff Filanc's motions to dismiss or objection to joinder." [Doc. 1 at ¶ 36; ECF No. 1 at ¶ 32].[10]

On January 27, 2022, Tetra Tech filed a brief objecting to the jurisdiction of the AAA and requesting a stay of the arbitration proceedings. *See* [Doc. 25-7].  Because Plaintiffs had already initiated their actions in this Court by that time, *see* [Doc. 1; ECF No. 1], Tetra Tech urged the AAA Panel to refrain from making any rulings until this Court resolves the instant consolidated action, arguing that "[i]f the Panel were to issue rulings on arbitrability at this time, that will create a risk of inconsistent determinations by the courts and the Panel." [Doc. 25-7 at 3].

On March 24, 2022—before Filanc or Tetra Tech responded to the First or Second Motion to Dismiss, respectively—the AAA Panel issued a ruling that the claims against Filanc and Tetra Tech remain arbitrable in the AAA Action. *See* [Doc. 41-5].  Relevant here, the Panel's findings included as follows:

a. The arbitration clause in the Contract between Lyons and Honeywell constitutes clear and unmistakable evidence that Lyons and Honeywell agreed to allow the arbitrator to determine arbitrability, as they incorporated the American Arbitration Association rules that authorize the arbitrator to decide jurisdictional questions (specifically Rule 9 of the AAA's Construction Industry Rules).

---

[9] The Parties did not submit any copies of Tetra Tech's motions with their briefs.

[10] The Parties did not submit a copy of the AAA Panel's January 6, 2022 Order.

b.   *Tetra Tech and Filanc each signed subcontracts with Honeywell wherein they each agreed to incorporate Honeywell's arbitration agreement with Lyons into their subcontracts (in this case, using AAA rules) and both Tetra Tech and Filanc agreed, via the incorporated arbitration provision, to be joined in any dispute resolution process that relates to their work on the WWTP.*   Neither Tetra Tech nor Filanc claim that their work did not relate to the WWTP or that Lyons' claims against Honeywell did not relate to the work performed by Tetra Tech and Filanc.   *Tetra Tech and Filanc also both agreed, "at Honeywell's sole discretion, to join and to participate in any dispute resolution process required by Honeywell's contract with the Customer and/or Owner if any dispute relates to the Subcontractor's work."*   Therefore, the Panel finds that Honeywell *properly invoked the joinder clause in the Tetra Tech and Filanc subcontracts.*

      * * *

g.   With regard to the federal court actions filed by Tetra Tech and Filanc, . . . [t]he net effect of their federal court actions is to stay this arbitration while not seeking immediate rulings on [their] jurisdictional objections to either federal court judge until those actions are fully tried to those Courts, which may be months, if not years, from now.   Based on the [P]anel's view that Honeywell appropriately invoked the joinder clause in its subcontracts with both Tetra Tech and Filanc (see supra), Rule R-9 of the AAA Construction Industry Rules provides the arbitrator the power to rule on jurisdiction including any objections with respect to the existence, scope, or validity of the arbitration agreement.

[*Id.* at 9–10, 12–13 (emphasis added)].

## IV.   The Federal Court Actions

On January 14, 2022—i.e., approximately one week after the AAA Panel issued its order "declaring, in relevant part, that it has authority 'to rule on jurisdiction, including objections to the existence, scope, or validity of arbitration agreements,'" [Doc. 1 at ¶ 36; ECF No. 1 at ¶ 32]— Filanc filed a Complaint against the Town and the Honeywell entities in the United States District Court for the District of Colorado ("Filanc Action").   [Doc. 1].   In its Complaint, Filanc asserts a single cause of action for Declaratory Judgment, seeking a declaration that "Defendants" may not join Filanc or maintain claims against Filanc in the AAA Arbitration.   [*Id.* at 6–8].   Filanc also requests "an injunction or stay prohibiting the AAA Arbitration from going forward until a determination is made as to [1] whether Plaintiff Filanc may be joined thereto *and* [2] whether

Defendants may maintain their claims against Plaintiff Filanc in the AAA Arbitration." [*Id.* at 8 (emphasis added)]. The same day, Filanc filed a Notice of Related Cases wherein it acknowledged that the Boulder Action "has subject matter, facts, and parties common to" the Filanc Action. [Doc. 6 at 1].

On January 27, 2022, Tetra Tech initiated a separate action in this Court, [ECF No. 1], naming only the Town as a defendant, making substantially similar allegations as Filanc, and seeking the same relief as that sought in Filanc's Complaint ("Tetra Tech Action"). *Compare* [ECF No. 1 at 9] *with* [Doc. 1 at 8]. At the time, the Honorable Daniel D. Domenico presided over both the Filanc Action and Tetra Tech Action. *See* [Doc. 22; ECF No. 22].[11]

On March 21, 2022, in the Filanc Action, the Honeywell entities filed Honeywell's Motion to Dismiss, [Doc. 24; Doc. 25; Doc. 26], and Lyons filed the Town's First Motion to Dismiss, [Doc. 27]. On April 5, 2022, Lyons filed a Motion to Consolidate Cases ("Motion to Consolidate"), seeking to consolidate the Filanc and Tetra Tech Actions. *See* [Doc. 30]; *see also* [Doc. 33 (Filanc's Notice of Non-Opposition to the Motion to Consolidate)]. On April 11, 2022, Filanc voluntarily dismissed without prejudice its claims against the Honeywell entities. *See* [Doc. 31 at 1; Doc. 39]. The same day, Filanc filed its response in opposition to the Town's First Motion to Dismiss, [Doc. 32], and the Town replied two weeks later on April 25, 2022, [Doc. 37].

On May 27, 2022, Judge Domenico granted the Motion to Consolidate. [Doc. 40]. In that Order, Judge Domenico explained that:

> Filanc already acknowledged that Tetra Tech's case "has subject matter, facts, and a party common to this action." Indeed, it does. Both cases have the same defendant: the Town of Lyons. Both Plaintiffs are involved . . . in concurrent state court proceedings and arbitration. Both Plaintiffs seek declaratory judgment that Lyons cannot join Plaintiffs or maintain claims against Plaintiffs in an arbitration

---

[11] On August 4, 2022, this consolidated action was reassigned to the undersigned judicial officer upon her appointment as United States District Judge. [Doc. 52]; *see also* [ECF No. 31].

proceeding before the American Arbitration Association. The ongoing state action and arbitration are tied to the parties' wastewater treatment plant contracts and subcontracts.

[*Id.* at 2–3 (citation omitted)]. Judge Domenico also directed Lyons and Tetra Tech to re-file in this consolidated action a motion to dismiss and cross motion for summary judgment that each party had respectively filed in the Tetra Tech Action, [*id.* at 3]—i.e., the Town's Second Motion to Dismiss, [Doc. 41], and Cross-Motion for Summary Judgment, [Doc. 43; Doc. 43-1], that are currently pending before this Court.[12] It is against this background that the Court now turns to the instant pending Motions, which are ripe for disposition.

## ANALYSIS

### I.   Honeywell's Motion to Dismiss

As noted above, the Honeywell entities are no longer parties in this action, pursuant to Filanc's voluntary dismissal without prejudice of the claims against Honeywell. *See* [Doc. 31 at 1; Doc. 39]. Accordingly, Honeywell's Motion to Dismiss is **DENIED AS MOOT**. *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (explaining that a voluntary dismissal "is self-executing and moots all pending motions" as to the dismissed parties).

### II.   The Town's First Motion to Dismiss and Second Motion to Dismiss

With a few exceptions, the Town's First Motion to Dismiss and Second Motion to Dismiss seek dismissal of this consolidated action pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or an order compelling Plaintiffs to participate in arbitration, based on substantially similar

---

[12] Lyons also filed the corresponding briefing for those motions. *See* [Doc. 44 (Lyons's Response to the Cross-Motion for Summary Judgment); Doc. 45 (Lyons's Reply in Support of the Second Motion to Dismiss); Doc. 46 (Tetra Tech's Reply in Support of the Cross-Motion for Summary Judgment); Doc. 47 (Tetra Tech's Response to the Second Motion to Dismiss)].

grounds. *See* [Doc. 24; Doc. 27; Doc. 41].[13]   Accordingly, the Court will decide these Motions collectively.

Lyons argues, *inter alia*, that (1) this Court should abstain from exercising jurisdiction pursuant to the *Colorado River* doctrine; (2) the Court should compel Plaintiffs to arbitration because they agreed to arbitrate their disputes, including threshold questions of arbitrability, and Plaintiffs have been participating in the arbitration proceedings since its inception; and (3) Plaintiffs' claims are barred by judicial estoppel. *See* [Doc. 27 at 1; Doc. 24 at 5–12; Doc. 41 at 7–14].   As explained in greater detail below, the Court finds that the circumstances of this case warrant this Court's abstention of jurisdiction pursuant to the *Colorado River* doctrine.

### A.      Legal Standards

***Federal Rule of Civil Procedure 12(b)(1).***   Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).   Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).   "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim.   Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Assn., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)).   "A court lacking jurisdiction cannot render judgment

---

[13] Lyons's First Motion to Dismiss, which is filed at [Doc. 27], "adopts by reference as if fully repeated [t]herein Honeywell's Motion to Dismiss and Compel Arbitration, dated March 21, 2022." [*Id.* at 1].   As a result, the majority of Defendant's arguments with respect to the First Motion to Dismiss are contained in Honeywell's Motion to Dismiss, which is filed at [Doc. 24]. *Compare* [Doc. 27] *with* [Doc. 24].   Accordingly, for purposes of clarity, the Court will rely upon the positions stated in Honeywell's Motion to Dismiss as if they were made by Lyons in the Town's First Motion to Dismiss.

but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019).

   ***The Federal Arbitration Act.***   The FAA provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA obligates courts to stay litigation on matters that the parties have agreed to arbitrate, while section 4 authorizes a federal district court to compel arbitration for a dispute over which it would have jurisdiction.  *See* 9 U.S.C. §§ 3, 4.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

   But, because "arbitration is a matter of contract," the Court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation omitted).  Indeed, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  The party seeking to compel arbitration bears the burden of establishing that the matter at issue is subject to arbitration.  *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1162 (D. Colo. 2001).  "Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157

F.3d 775, 779 (10th Cir. 1998).  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *Id.*

### B.     Defendant's Jurisdictional Challenges

As a threshold matter, the Court finds that, at this stage in the proceedings, Plaintiffs have appropriately invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See* [Doc. 1 at ¶ 10; ECF No. 1 at ¶ 5].[14]

In its briefs, Lyons argues that this Court "*may* lack jurisdiction over the Parties" on the basis that "[a]ny federal court action that includes all relevant parties – Lyons, Tetra Tech, Honeywell, and Filanc – will not have complete diversity of citizenship."  [Doc. 37 at 11–12 (emphasis added) (capital letters omitted)]; *see also* [Doc. 41 at 14, 16; Doc. 45 at 9–10 (arguing that "[t]he addition  of Honeywell to this litigation will negate this Court's jurisdiction under 28 U.S.C. § 1332")].  However, there is no dispute that the Honeywell entities are no longer parties to this action.  *See* [Doc. 31; Doc. 39].  Thus, Defendant's jurisdictional challenge—namely, the issue of this Court's retention of diversity jurisdiction based on a possible *future* event, i.e., Honeywell's re-joinder—is not presently ripe for this Court's consideration.

---

[14] Plaintiffs also assert that this Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.  [Doc. 1 at ¶ 11; ECF No. 1 at ¶ 6].  Plaintiffs further claim that this Court has jurisdiction pursuant to the FAA.  [Doc. 1 at ¶ 12; ECF No. 1 at ¶ 7].  But neither the Declaratory Judgment Act nor the FAA independently confer subject matter jurisdiction.  *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (explaining the Declaratory Judgment Act does not "confer jurisdiction upon federal courts," and therefore "the power to issue declaratory judgments must lie in some independent basis of jurisdiction," such as diversity jurisdiction); *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1054 (10th Cir. 2006) (recognizing that "the FAA does not itself confer subject matter jurisdiction").

Next, the Court turns to Lyons's arguments that this Court should abstain from exercising its jurisdiction.

### C.     Abstention Under the *Colorado River* Doctrine

The *Colorado River* abstention doctrine permits federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" where the federal court would otherwise have concurrent jurisdiction with the state court.  *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).   Abstention under this doctrine "is based on the policy of conserving judicial resources in situations involving the contemporaneous exercise of concurrent jurisdictions." *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 707 (10th Cir. 1988).  In such situations, it lies within the discretion of the district court to stay or dismiss the federal action for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Maulding*, 16 F.3d at 1080 (quoting *Colo. River*, 424 U.S. at 817).  However, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, and "declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in exceptional circumstances." *Id.* at 1081.

The Supreme Court has cautioned that granting a stay or dismissal pursuant to the *Colorado River* doctrine would be "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).  Thus, the Court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of

justifications, that can suffice under *Colorado River* to justify the *surrender* of the jurisdiction." *Id.* at 25–26 (internal quotation marks omitted).

Moreover, although the Town invokes Federal Rule of Civil Procedure 12(b)(1) in its Motions, *see* [Doc. 27; Doc. 41], the Court notes that "a motion requesting dismissal or a stay under the *Colorado River* doctrine does not fall under any enumerated provision of Federal Rule of Civil Procedure 12(b)." *Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1196 (D. Kan. 2013). Nevertheless, courts may exercise discretion to consider pre-answer motions involving abstention or surrender of jurisdiction. *Id.* Indeed, "the existence of parallel state coercive and federal declaratory proceedings presents a significantly different problem for the federal district court facing a motion to dismiss or stay" because "[t]he Federal Declaratory Judgments Act authorizes, but does not compel, federal jurisdiction over suits seeking declaratory relief." *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 440 (10th Cir. 1992) (observing that "federal courts have wide discretion in refusing to hear duplicative declaratory proceedings"). As a result, "unlike coercive actions, declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction." *Id.*[15]

Application of the *Colorado River* doctrine requires a two-part analysis. Specifically, to determine whether *Colorado River* abstention applies, "a federal court must first determine whether the state and federal proceedings are parallel." *Maulding*, 16 F.3d at 1081. If the proceedings are parallel, then courts consider a "nonexclusive list of factors" to determine whether "exceptional circumstances" exist to warrant deference to the parallel state proceedings. *Id.* at 1082. The Tenth Circuit has recognized the following such factors:

---

[15] Nevertheless, as explained above, Plaintiffs have sufficiently invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

1. the possibility that one of the two courts has exercised jurisdiction over property

2. the inconvenience from litigating in the federal forum

3. the avoidance of piecemeal litigation

4. the sequence in which the courts obtained jurisdiction

5. the "vexatious or reactive nature" of either case

6. the applicability of federal law

7. the potential for the state-court action to provide an effective remedy for the federal plaintiff

8. the possibility of forum shopping.

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018) (citing *Maulding*, 16 F.3d at 1082).

### 1.      Parallelism Between State and Federal Proceedings

First, the Court must determine whether the Boulder Action filed by Lyons is parallel to the instant consolidated action filed by Filanc and Tetra Tech.  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Maulding*, 16 F.3d at 1081.  The Court examines "the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction." *Allen v. Bd. of Educ., Unified Sch. Dist.*, *436*, 68 F.3d 401, 403 (10th Cir. 1995) (internal citations and quotation marks omitted).

The parties in the Boulder Action and this action are essentially the same.  Lyons is the plaintiff and Filanc and Tetra Tech are among the defendants in the Boulder Action; whereas, here, Filanc and Tetra Tech are the plaintiffs, and Lyons is the defendant.  That the Honeywell entities and FEI are defendants in the Boulder Action, but not in this consolidated action, is insignificant for purposes of finding parallelism—i.e., substantial similarity—between the parties. *See CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 589 (10th Cir. 2018) ("We fail to see how inclusion of

[a third party] as a state-court defendant defeats the determination that the state and federal cases are parallel."); *Maulding*, 16 F.3d at 1082 (stating that this prerequisite is met "if substantially the same parties litigate substantially the same issues").

The Court also finds that the parties are litigating "substantially the same issues in different forums," *id.* at 1081, given that the issues in this consolidated action and the Boulder Action "involve claims related to the design and construction" of the WWTP and "involve disputes regarding the proper venue for resolving the claims." [Doc. 41 at 7–8]; *see also* [Doc. 24 at 6]. Plaintiffs, however, disagree that the two actions are parallel. *See* [Doc. 32 at 5–6; Doc. 47 at 10–11].

First, Filanc argues that the actions are not parallel because, in this action, it seeks "declaratory judgment that Lyons cannot force Filanc into arbitration before the AAA," and this issue is not present in the Boulder Action "because Lyons filed its arbitration demand *months* after the Boulder County court stayed Lyons' state court action." [Doc. 32 at 6]. However, Filanc offers no support for its position that the mere filing of an arbitration demand after the state court stayed the Boulder Action renders the Boulder Action and this consolidated action dissimilar. *See* [*id.*]. Significantly, Lyons filed its arbitration demand only *after* the state court entered an order granting Honeywell's motion to compel arbitration. *See* [Doc. 25-4]. And it was in that order that the state court *also* stayed the Boulder Action "pending the outcome of arbitration if any claims or need for enforcement remain." [Doc. 25-4 at 1]. The state court also expressly stated that "[a]ny issues of jurisdiction and of arbitrability should be decided by the arbitrator in accordance with the Contract's incorporation of the AAA rules." [*Id.* at 2–3].

Moreover, in its request that the state court dismiss Lyons's complaint in the Boulder Action, Filanc conceded the Prime Contract "contains a broad and enforceable arbitration clause

requiring [Lyons] to arbitrate any controversy or claim between Honeywell and [Lyons] arising out of or relating to their agreement concerning the Project." [Doc. 25-3 at 10]. Filanc also acknowledged that "[t]o the extent [Lyons's] claims implicate subcontractors' work, Filanc may be required to participate in arbitrations under the terms of the Subcontract." [*Id.*]. Likewise, as mentioned above, Filanc acknowledged in its Notice of Related Cases that the Boulder Action "has subject matter, facts, and parties common to this action." [Doc. 6 at 1]. Accordingly, the Court finds that Filanc's present arguments do not establish a lack of substantial similarily between these matters.

Second, Tetra Tech contends that the actions are not parallel on the basis that (1) the state court's "ruling concerning arbitration was strictly limited to the interpretation of the Prime Contract" and (2) the state court failed to consider the "issues of arbitrability related to" two separate Honeywell-Tetra Tech contracts that were executed *before* the Tetra Tech Subcontract at issue in this action. [Doc. 47 at 10]; *see also* [*id.* at 2–8 (explaining the relationships between the various contracts)]. Specifically, Tetra Tech insists that Lyons's position fails to account for two contracts it claims are relevant to this action: (1) "the Technical Energy Audit Contract for the Colorado Energy Performance Contracting Program between the Town and Honeywell, dated September 20, 2010 ('TEA Contract')" and (2) "the April 2, 2013 Purchase Order/Subcontract between Honeywell and Tetra Tech ('4/2/13 PO')." [*Id.* at 2]; *see also* [Doc. 47-1 (TEA Contract); Doc. 47-5 (4/2/13 PO)].[16] Tetra Tech then spends much of its response brief addressing why Lyons's argument purportedly improperly focuses on the provisions in the Prime Contract and Tetra Tech Subcontract, *see* [Doc. 47 at 2–10], whereas, in this action, Tetra Tech "seeks to raise

---

[16] The TEA Contract and 4/2/13 PO apparently concerned an audit that related to the construction of the WWTP. *See* [Doc. 47 at 2]; *see also* [Doc. 45 at 2].

issues of arbitrability related to the 2010 TEA Contract and the 4/2/13 PO." [*Id.* at 10]. "To put it succinctly," states Tetra Tech, "the Town is focused on the Lyons construction project, while Tetra Tech is focused on the earlier audit project." [*Id.* at 2].

Like Filanc's disputes, the Court also finds Tetra Tech's position lacks any basis. Significantly, Tetra Tech's Complaint makes allegations regarding only two contracts: the Prime Contract and the Tetra Tech Subcontract. *See* [ECF No. 1 at ¶¶ 10, 12–13, 15–16]; *see also* [ECF No. 1-3 (the May 13, 2014 Tetra Tech Subcontract)]. And as Defendant points out, Tetra Tech's Complaint fails to make "any allegations regarding any other contracts" and "makes a single claim for declaratory judgment with respect to the terms of the" Prime Contract and Tetra Tech Subcontract. [Doc. 45 at 2]. Moreover, although Tetra Tech claims in its response that it is "focused on the earlier audit project" while "the Town is focused on the Lyons construction project," [Doc. 47 at 2], Tetra Tech fails to mention any such audit project at all in its Complaint. *See* [ECF No. 1]. Rather, Tetra Tech's Complaint expressly states that "[t]his is an action for declaratory judgment to determine the rights of the parties arising from Tetra Tech's subcontract to provide *construction services* on a waste water [sic] treatment plant owned by Lyons." [ECF No. 1 at ¶ 10 (emphasis added)].

Under these circumstances, the Court finds that this consolidated action and the Boulder Action are sufficiently parallel insofar as they involve substantially the same parties and issues. *See CNSP, Inc.*, 753 F. App'x at 589–90 ("Proceedings may be parallel even if they are far from identical. Based on the circumstances showing that substantially the same parties are litigating substantially the same issues in both the federal and state cases, we find no abuse of discretion in the district court's determination that the state and federal proceedings are parallel." (internal quotation marks and citation omitted)).

2.      ***Colorado River* Factors**

Finding that this consolidated action and the Boulder Action are parallel, the Court now turns to the non-exhaustive list of *Colorado River* factors to determine whether "exceptional circumstances" exist to warrant abstention.   *Maulding*, 16 F.3d at 1082; *see also Wakaya Perfection, LLC*, 910 F.3d at 1122 (setting forth the *Colorado River* factors).  No single factor is dispositive, and the weight given to each factor is left to the Court's discretion.  *See Maulding*, 16 F.3d at 1082.

Regarding the ***first factor***, i.e., "the possibility that one of the two courts has exercised jurisdiction over property," *Wakaya Perfection, LLC*, 910 F.3d at 1122, the Court finds this factor is inapplicable given that there is no property at issue in this case other than the WWTP owned by the Town.  *See* [Doc. 24 at 6; Doc. 41 at 8]; *see also D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1234 (10th Cir. 2013) ("Neither the state nor district court has acquired jurisdiction over property in the course of this litigation. That is to say, this is not an action in rem or quasi in rem."); *Leago v. Ricks*, No. 20-cv-03297-NRN, 2021 WL 2650316, at *3 (D. Colo. June 28, 2021) ("I find that the first [factor] is inapplicable because there is no property involved in this case.").

As to the ***second factor***, i.e., the inconvenience from litigating in the federal forum, Lyons asserts that this factor is neutral given that the Boulder County District Court and the United States District Court for the District of Colorado are located nearby one another, and no party has claimed that state court is inconvenient or inadequate.  *See* [Doc. 24 at 6; Doc. 41 at 8].  The Court agrees that this factor is neutral.  Indeed, the Boulder Action began in Boulder County District Court, which is located within the Denver-Aurora-Lakewood metropolitan area.  *D.A. Osguthorpe Fam. P'ship*, 705 F.3d at 1234 (affording "scant weight" to the second factor because the state and

federal courthouses were "at no great geographical distance from each other, and no party ha[d] suggested any physical or logistical inconvenience suffered as a result of litigating in dual forums").

Turning to the ***third factor***—the avoidance of piecemeal litigation—the Tenth Circuit has held that this factor is the "paramount" consideration of the analysis under *Colorado River*. *Id.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Leago*, 2021 WL 2650316, at *4. The Court finds that the third factor weighs significantly in favor of abstention. As Lyons points out, before Judge Domenico consolidated the two federal actions, there existed four successive proceedings relating to the same subject matter: (1) the Boulder Action in state court, (2) the AAA Arbitration before the AAA Panel, (3) the Filanc Action in federal court, and (4) the Tetra Tech Action in federal court. *See* [Doc. 24 at 7; Doc. 41 at 8].

Filanc argues that "there is no danger of piecemeal litigation if this Court maintains jurisdiction over Filanc's declaratory relief action" because, as previously discussed, Filanc purports to seek "declaratory judgment that Lyons cannot force Filanc into arbitration before the AAA." [Doc. 32 at 6].[17] However, again, Filanc offers no support for its position and, in any event, its position lacks merit. As mentioned above, Honeywell argued in its motion to compel in the Boulder Action that the arbitration provisions in the Filanc and Tetra Tech Subcontracts "would allow Honeywell to join them as parties to any arbitration proceeding with the Town," [Doc. 25-2 at 15], based on language in the Subcontracts stating that:

> Subcontractor agrees, at Honeywell's sole discretion, to join and to participate in any dispute resolution process required by Honeywell's contract with the Customer

---

[17] Although Filanc addresses the *Colorado River* factors in its response to the First Motion to Dismiss, Tetra Tech fails to do so in its response to the Second Motion to Dismiss. *Compare* [Doc. 32 at 6–8] *with* [Doc. 47 at 9–11].

and/or Owner if any dispute relates to Subcontractor's work.

[*Id.* at 15 n.5 (internal quotation marks omitted)]; *see also* [Doc. Doc. 41-2 at 6; Doc. 41-3 at 7]. Thereafter, the state court ordered that the Boulder Action "matter and all of the Town's claims against Honeywell must be submitted to binding arbitration" and "[a]ny issues of jurisdiction and of arbitrability should be decided by the arbitrator in accordance with the Contract's incorporation of the AAA rules." [Doc. 25-4 at 3].

In addition, in its own request that the state court dismiss Lyons's complaint in the Boulder Action, Filanc conceded the Prime Contract "contains a broad and enforceable arbitration clause requiring [Lyons] to arbitrate any controversy or claim between Honeywell and [Lyons] arising out of or relating to their agreement concerning the Project." [Doc. 25-3 at 9]. Filanc also asserted that "[t]o the extent [Lyons's] claims implicate subcontractors' work, Filanc may be required to participate in arbitrations under the terms of the Subcontract." [*Id.*]. What is more, Filanc insisted that there was a "great" risk "of wasteful, duplicative litigation and inconsistent results" if the state court disallowed a stay pending completion of arbitration. [*Id.* at 9–10]. Tetra Tech, in the AAA Arbitration, similarly warned against "a risk of inconsistent determinations" if the Court were to rule on issues before the AAA Panel. [Doc. 25-7 at 3].

Moreover, the AAA Panel ruled that the claims against Filanc and Tetra Tech remain arbitrable in the AAA Action on March 24, 2022—*before* Filanc or Tetra Tech responded to the First Motion to Dismiss or Second Motion to Dismiss, respectively—including that:

> Tetra Tech and Filanc each signed subcontracts with Honeywell wherein they each agreed to incorporate Honeywell's arbitration agreement with Lyons into their subcontracts (in this case, using AAA rules) and both Tetra Tech and Filanc agreed, via the incorporated arbitration provision, to be joined in any dispute resolution process that relates to their work on the WWTP. . . . Tetra Tech and Filanc also both agreed, "at Honeywell's sole discretion, to join and to participate in any dispute resolution process required by Honeywell's contract with the Customer and/or Owner if any dispute relates to the Subcontractor's work."  Therefore, the

22

Panel finds that Honeywell properly invoked the joinder clause in the Tetra Tech and Filanc subcontracts.

[Doc. 41-5 at 10].

Under these circumstances, the Court finds that the relief Plaintiffs seek in this action—namely, (1) a declaration that Lyons may not maintain any claims against Plaintiffs in, or join Plaintiffs to, the AAA Arbitration; and (2) an injunction prohibiting the AAA Arbitration from going forward until a determination is made as to whether (a) Plaintiffs may be joined to the arbitration and (b) whether Lyons may maintain their claims against Plaintiffs in the arbitration, [Doc. 1 at 8; ECF No. 1 at 9]—would certainly result in this Court considering the same issues that the state court has already ordered to be submitted to binding arbitration. *See, e.g.*, *Foxfield*, 918 F. Supp. 2d at 1199 ("Here, duplication of proceedings is almost certain to occur, as the issues being litigated in state court mirror those before the court in this action, and both cases rely on the same factual and legal assertions.").  Therefore, due to the substantial risk of piecemeal litigation were this action to continue in this forum, the Court finds that this factor weighs significantly in favor of abstention.  *See id.*; *see also Cassino v. JPMorgan Chase Bank Nat'l Ass'n*, No. 20-cv-03228-RM-KLM, 2021 WL 3666964, at *5 (D. Colo. Aug. 17, 2021), *report and recommendation adopted sub nom.* 2021 WL 4398603 (D. Colo. Sept. 27, 2021), *aff'd*, No. 22-1049, 2022 WL 3012270 (10th Cir. July 29, 2022).

Regarding the ***fourth factor***, i.e., the sequence in which the courts obtained jurisdiction, this factor "is not a strict first-past-the-post analysis; rather, priority is measured 'in terms of how much progress has been made in the two actions.'"  *Watermark Harvard Square, LLC v. Calvin*, No. 17-cv-00446-RM-KMT, 2018 WL 1166707, at *5 (D. Colo. Mar. 6, 2018) (quoting *Cone Mem'l Hosp.*, 460 U.S. at 21–22), *report and recommendation adopted*, 2018 WL 1952587 (D. Colo. Mar. 29, 2018).  The Supreme Court has advised that this factor "is to be applied in a

pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Meml. Hosp.*, 460 U.S. at 21.

The Court finds the fourth factor weighs slightly in favor of abstention. There is, of course, no question that the state court obtained jurisdiction before Plaintiffs filed their Complaints in this Court. However, apart from Defendant's assertion that "the state court [has] decided substantive motions of arbitrability" and reviewed the parties' status updates since the Boulder Action was filed, *see* [Doc. 24 at 8; Doc. 41 at 10], there is no record before this Court to confirm the progress in the Boulder Action. Nevertheless, at the time the state court compelled arbitration in May 2021, the parallel proceedings in federal court had not yet begun and would not for nearly eight more months. *See D.A. Osguthorpe Fam. P'ship*, 705 F.3d at 1235 (explaining that whether parallel proceedings had already begun in federal court is "a consideration that ties into the fourth *Colorado River* factor").

The Court also finds the **fifth factor**, i.e., the "vexatious or reactive nature" of either case, favors abstention. Filanc initiated its own federal action on January 14, 2022—nearly one year after Lyons initiated the Boulder Action, *see* [Doc. 1 at ¶ 26], and approximately one week after the AAA Panel issued an order "declaring, in relevant part, that it has authority 'to rule on jurisdiction, including objections to the existence, scope, or validity of arbitration agreements.'" [*Id.* at ¶ 36; ECF No. 1 at ¶ 32]. Tetra Tech, on the other hand, initiated a separate action on January 27, 2022—the same day it filed a brief in the AAA Arbitration objecting to the AAA's jurisdiction and urging the AAA Panel to refrain from making any further rulings until this Court resolves the pending federal action, arguing that "[i]f the Panel were to issue rulings on arbitrability at this time, that will create a risk of inconsistent determinations by the courts and the Panel." [Doc. 25-7 at 3]. Thus, the initiation of this consolidated action appears to be reactive to the

likelihood that the AAA Panel would address Plaintiffs' jurisdictional objections, and vexatious insofar as Plaintiffs seek relief which was or could have been asserted in the Boulder Action—i.e., a declaration and injunction excluding Filanc and Tetra Tech from participating in the AAA Arbitration. *See Cassino*, 2021 WL 3666964, at *5 ("[T]he case here appears to be reactive to his loss in state court and vexatious to the extent he asserts claims which were or which could have been asserted in the state court litigation."); *see also D.A. Osguthorpe Fam. P'ship*, 705 F.3d at 1235 ("And it has also not escaped our attention that [the plaintiff] came to the federal courts for relief only after receiving an unfavorable state-court ruling on arbitrability several years after litigation had begun in Utah's state-court system.").

The ***sixth and seventh factors***—whether the state-court action can provide an effective remedy for the federal plaintiff and the applicability of federal law—also favor abstention. Filanc disagrees, arguing that "[t]his Court has jurisdiction, under the FAA, to determine 'gateway questions of arbitrability' including 'questions about the formation or existence of an arbitration agreement, namely the element of mutual assent.'" [Doc. 32 at 7]. Filanc also restates that "the issue of arbitrability presented in this action is not before the Boulder County court because Lyons filed its AAA arbitration demand months after the Boulder action was stayed." [*Id.* at 7–8]. Therefore, Filanc continues, "there is no possibility that the Boulder County court will provide Filanc the relief it seeks in this action." [*Id.* at 8].

Although the Court agrees generally that the FAA governs whether the Court should compel arbitration, "this factor does not automatically compel the conclusion that the resolution of a claim arising under the Act is a task better suited for the federal courts." *D.A. Osguthorpe Fam. P'ship*, 705 F.3d at 1235. Indeed, "[s]tate courts rather than federal courts are most frequently called upon to apply the Federal Arbitration Act." *Nitro-Lift Techs., L.L.C. v.*

*Howard*, 568 U.S. 17, 17 (2012).   Further, Filanc and Tetra Tech agree that the FAA governs whether they are subject to participate in the AAA Arbitration, *see, e.g.*, [Doc. 1 at ¶ 12; ECF No. 1 at ¶ 7], and they have not challenged the validity of the Prime Contract and Filanc and Tetra Tech Subcontracts.   In addition, Plaintiffs raise questions of whether they agreed to arbitrate under the AAA rules, which is a question of contract interpretation governed by Colorado law.   This factor weighs in favor of abstention.  *See D.A. Osguthorpe Fam. P'ship*, 705 F.3d at 1235 ("[T]he bare fact that [a plaintiff] has thus far failed to obtain its desired outcome in . . . state-court litigation does not give us sufficient reason to think that [the plaintiff's] rights are somehow less protected in the . . . state-court proceedings."); *cf. THI of New Mexico at Las Cruces, LLC v. Fox*, 727 F. Supp. 2d 1195, 1211 (D.N.M. 2010) ("The Defendants, however, have not disputed that the FAA governs the parties' Arbitration Agreement, nor have they argued that, if the Arbitration Agreement is valid, they should not be compelled to arbitrate. . . . The determination whether the agreement is valid or unconscionable is governed by state law.   Thus, to compel arbitration under the FAA, the Court would first have to apply state law to determine if the Arbitration Agreement is valid.   Because interpretation of the Arbitration Agreement under New Mexico law is the primary issue in dispute, the Court finds this factor weighs in favor of abstention.").

Regarding the ***eighth and final factor***—the possibility of forum shopping—Lyons argues that Filanc and Tetra Tech filed their actions in this Court due to their dissatisfaction with the state court's ruling "and concern[] about how the AAA Panel might address arbitrability."  [Doc. 41 at 11].   Lyons also contends that Filanc and Tetra Tech each "(1) participated in the selection of the members of the AAA Panel; (2) waited for the appointment of the AAA Panel; and (3) requested changes to the briefing schedule set by the AAA Panel before shopping for another forum with this Court."  [*Id.*].   In response, Filanc does not dispute Lyons's version of events.  *See* [Doc. 32

at 8]. Rather, Filanc argues that Lyons "is guilty of forum shopping" because it "first pedaled its . . . breach of contract claim against Filanc in state court" and, "[w]hen that failed, [Defendant] filed the same deficient claim against Filanc in AAA arbitration even though Filanc never agreed to arbitrate with [Defendant]." [*Id.*]. Respectfully, the Court agrees with Defendant.

As noted with respect to the fifth factor, the record indicates that Plaintiffs were dissatisfied with (1) the state court's order directing Honeywell to submit all of its claims to arbitration, including that "[a]ny issues of jurisdiction and of arbitrability should be decided by the arbitrator," [Doc. 25-4 at 3]; and (2) the AAA Panel's subsequent indication that it was preparing to address Plaintiffs' jurisdictional objections, *see* [Doc. 1 at ¶ 36]. Thus, it appears that Plaintiffs then decided to shop for another forum which they hoped would be more favorable to their defenses, i.e., this federal forum. "Indeed, it is difficult to read the facts and allegations of this case in any other way." *Cassino*, 2021 WL 3666964, at *6. The Court thus finds that the eighth factor weighs in favor of abstention. *See id.*; *see also Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990) ("[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules."); *Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) ("After two-and-a-half years, AIU is abandoning its state court case solely because it believes that the Federal Rules of Evidence are more favorable to it than the state evidentiary rules. This epitomizes forum shopping.").

In sum, the Court finds that, on balance, the *Colorado River* factors weigh in favor of abstaining from the exercise of jurisdiction under the specific circumstances of this case.

### 3.     Whether to Stay or Dismiss the Consolidated Action

Finding that it should abstain from exercising its jurisdiction in this consolidated action,

the Court must now determine whether this case should be dismissed or whether it should be stayed pending resolution of the Boulder Action. *See Fox*, 727 F. Supp. 2d at 1213. When it is possible that "the state court proceedings [may] not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." *Maulding*, 16 F.3d at 1082.

Tetra Tech contends that "even if the Court were to find that this proceeding and the Boulder [Action] . . . are parallel, the adequacy of the parallel state proceeding to decide arbitrability would be insufficient by itself to warrant a stay under the *Colorado River* abstention doctrine." [Doc. 47 at 11]. However, as noted above, Tetra Tech failed to address any of the *Colorado River* factors at all in its response. *See supra* note 17. Indeed, Tetra Tech only discussed whether the proceedings in state court and federal court are parallel, *see* [Doc. 47 at 8–11], but parallelism is only the first inquiry in the two-part *Colorado River* analysis. *See Maulding*, 16 F.3d at 1081. And Tetra Tech did not ask the Court to stay this action if it finds that abstention—rather than merely parallelism—is appropriate. *See Fox*, 727 F. Supp. 2d at 1213.

Further, notwithstanding Plaintiffs' invocation of this Court's diversity jurisdiction, the Court notes the Town's position that Honeywell is a necessary and indispensable party to this action. *See* [Doc. 37 at 12–13; Doc. 45 at 9–10]. Specifically, Lyons argues that "when [it] joins Honeywell . . . as [a] necessary and indispensable third-party defendant[], . . . the Court will lack diversity jurisdiction to proceed with" Plaintiffs' claims for relief. [Doc. 45 at 10]. For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009). Tetra Tech alleges that it is a citizen of Delaware and California, *see* [ECF No. 1 at ¶ 1], and Filanc alleges that Honeywell is a

citizen of Delaware and North Carolina, *see* [Doc. 1 at ¶ 4]. Notably, Honeywell is the only consistent party in the Prime Contract, Filanc Subcontract, and Tetra Tech Subcontract. *See* [Doc. 41-1; Doc. 41-2; Doc. 41-3]. And the Honeywell entities were defendants in the Filanc Action until April 11, 2022—less than one week after Lyons moved to consolidate the Filanc Action and Tetra Tech Action. *See* [Doc. 30; Doc. 31]. Under these circumstances, the Court finds that there is a strong likelihood this federal forum prevents Plaintiffs from re-joining Honeywell, "a proper (if not necessary and indispensable) party because doing so would destroy diversity jurisdiction." *Leago*, 2021 WL 2650316, at *4.

Nevertheless, Honeywell is not presently a party in this consolidated action, and the Court has already determined that abstention is warranted pursuant to *Colorado River*. Thus, although the state court will almost certainly resolve any remaining claims pending completion of arbitration, out of an abundance of caution, the Court finds that administrative closure—rather than an indefinite stay of the proceedings—is more appropriate here. *See Maulding*, 16 F.3d at 1083 ("We think the better practice is to stay the federal action pending the outcome of the state proceedings."); *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987) (noting that administrative closure is construed as "the practical equivalent of a stay"); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."); *Leago*, 2021 WL 2650316, at *5 (ordering administrative closure and explaining that, "[a]lthough Plaintiffs' pending claims will almost certainly be resolved in the State Court Action, out of an abundance of caution, I find that a stay is more appropriate").

Accordingly, the Court will order that this consolidated action be administratively closed,

subject to reopening for good cause. *See* D.C.COLO.LCivR 41.2 ("A district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause. Administrative closure of a civil action terminates any pending motion. Reopening of a civil action does not reinstate any motion.").[18]

In sum, based on the circumstances of this case, as outlined in this order, Lyons's First Motion to Dismiss and Second Motion to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

### III.   Tetra Tech's Cross-Motion for Summary Judgment

In light of the above conclusions, Tetra Tech's Cross-Motion for Summary Judgment is **DENIED AS MOOT**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Honeywell International Inc.'s Motion to Dismiss and Compel Arbitration [Doc. 24] is **DENIED AS MOOT**;

(2)   Defendant Town of Lyons's Motion to Dismiss Complaint [Doc. 27] is **GRANTED IN PART AND DENIED IN PART**;

(3)   Defendant Town of Lyons's Motion to Dismiss Tetra Tech's Complaint or to Compel Arbitration [Doc. 41] is **GRANTED IN PART AND DENIED IN PART**;

---

[18] Demonstrating good cause to reopen an administratively closed matter is not onerous; rather, "good cause to reopen a case exists where the parties wish to litigate the remaining issues that have become ripe for review." *Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (quotations omitted); *see also Frederick v. Hartford Underwriters Ins. Co.*, No. 11-cv-02306-RM-KLM, 2015 WL 1499662, at *1 (D. Colo. Mar. 27, 2015) ("Here, Defendant seeks a determination of the parties' rights and claims. Thus, good cause exists to reopen the matter." (internal citations omitted)).

(4)     Tetra Tech Inc.'s Cross-Motion for Summary Judgment [Doc. 43; Doc. 43-1] is

**DENIED AS MOOT**;

(5)     The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this

consolidated action pending resolution of the Boulder Action, i.e., *Town of Lyons*

*v. Honeywell International, Inc. et al.*, Case No. 2021CV30180, filed in the District

Court for Boulder County, Colorado; and

(6)     The Parties are **DIRECTED** to contact the Court to set a Status Conference within

10 days after final resolution of the Boulder Action.

DATED:  November 16, 2022                BY THE COURT:

                                         _____
                                         Nina Y. Wang
                                         United States District Judge